**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:                                              )
                                                      )      Chapter 11
PEM THISTLE LANDING TIC 23, LLC,   )
                                                      )      Case No. 13-13273(KG)
               Debtor.                         )
                                                      )      **Re:  Dkt No. 56**
_____)

## MEMORANDUM OPINION

The pending matter before the Court is a motion to dismiss or grant relief from stay (the "Motion") (D.I. 56).  The Debtor is PEM Thistle Landing TIC 23 ("Debtor").  The movant is DOF IV Reit Holdings, LLC ("DOF IV"), Debtor's secured lender by assignment.  The Court will dismiss the case for the reasons which follow.

## FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts of this case are unusual.  The Debtor, a Delaware limited liability company, is one of thirty-one tenants-in-common ("TICs") which own a commercial property in Phoenix, Arizona, known as Thistle Landing (the "Property").  The TICs purchased the Property in October 2005.  The Debtor owns a .97% (less than one percent) interest in the Property.

On October 31, 2005, PEM Thistle Landing H, LLC and PEM Thistle Landing S, LLC (the "Initial Borrowers") executed and delivered to PNC Bank, National Association ("PNC"), a promissory note (the "Note") in the principal sum of $37 million, to be secured by the Property.  The amount Debtor and the TICs now owe, with principal and interest, is now approximately $38.9 million.  Affidavit of Abbey Kosakowski in Support of the Motion (D.I. 59-1).  The Initial Borrowers thereafter granted a first secured interest in the Property by a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Security Interest"), which PNC

properly recorded.  For purposes of the Motion, the Property has a value of $39.5 million.

In February 2006, the Debtor and each of the other TICs executed consent and assumption agreements whereby they undertook obligations of the Initial Borrowers under the Security Interest and, as such, became borrowers.  The Debtor and the TICs consequently received their ownership interests in the Property, Debtor receiving its .97% interest.

DOF IV became the holder of the Security Interest through a series of assignments and allonges, none of which are germane to the present dispute.  The Debtor and the TICs thus became obligated to make monthly installment payments to DOF IV.  However, beginning April 1, 2013, the Debtor and the TICs failed to make payments required by the Security Interest, and also have failed to make subsequent payments to date.  Thus, with Debtor and the TICs in default, DOF IV commenced a non-judicial foreclosure sale of the Property which was scheduled for December 20, 2013.  On December 17, 2013, the Debtor filed its voluntary petition for bankruptcy protection under Chapter 11 of the Bankruptcy Code.  Debtor's admitted purpose for filing the bankruptcy case was to stop the foreclosure sale of the Property.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested are Sections 105, 1129(b) and 362(d) of the Bankruptcy Code, and Bankruptcy Rules 2002 and 9014.

2

## **DISCUSSION**

The Court begins its discussion with the obvious but important observation that only the Debtor, whose sole asset is a less than one percent interest in the Property located in Arizona, is before the Court. The value of the Property is of incidental concern because Debtor owns a minor stake. As DOF IV's attorney stated, this is the proverbial case of the tail -- and a bobbed one at that -- wagging, or attempting to wag the dog.

DOF IV argues that the Court should dismiss the case for cause and as a bad faith filing pursuant to Bankruptcy Code Section 1112(b). DOF IV cites to *In re 15375 Memorial Corp.*, 589 F.3d 605 (3d Cir. 2009) for the proposition that the totality of the facts and circumstances of the case show that Debtor cannot establish good faith because the filing serves no valid business purpose and that Debtor filed the case to obtain a tactical litigation advantage, namely, to stop the foreclosure proceeding. *See also*, *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. 2004). DOF IV argues that there is no valid business purpose for the bankruptcy, which requires the preservation of a going concern or maximization of value. *Integrated Telecom*, 84 F.3d at 120. Debtor has no employees or operations and, as such, is not a going concern. Factors which courts consider in determining whether a case is valid or filed in bad faith include whether the case is or has:

> (1) single asset case, (2) few unsecured creditors, (3) no operating business or employees, (4) petition filed on eve of foreclosure, (5) two party dispute which a state court action can resolve, (6) no cash or income, (7) no possibility of reorganization, (8) filing solely to create automatic stay.

*In re Primestone Inv. Partners, L.P.*, 272 B.R. 554 (D. Del. 2002).

Debtor plainly satisfies most of the factors which favor dismissal --  single asset case, few unsecured creditors, no operating business, no employees, petition filed on eve of foreclosure and no cash or income.

Most  importantly,  Debtor has filed a non-confirmable plan of reorganization (the "Plan"). The Plan calls for DOF IV's entering into an amended loan with Debtor and the non-debtor TICs. That would require a "cramdown" since DOF IV has made it clear that it will reject the Plan. Debtor, with its .97% interest, will also have to reorganize the debt to DOF IV of the other 30 TICs. Doing so is not legally possible.

Several points of Arizona law apply.[1]  First, in the absence of an agreement a tenant in common does not have authority to bind other co-tenants in common.  *Jolly v. Kent Realty, Inc.,* 729 P.2d 310 (Ariz. Ct. App. 1986).  Second, without a written agreement, common tenancies does not establish a partnership.  A.R.S. § 29-1012(C)(1).  Here, there is no written agreement between Debtor and the other TICs.  Debtor is acting for itself.

The case which is particularly instructive is *In re Geneva ANHX IV LLC*, 496 B.R. 888 (C.D. Ill. 2013) ("*Geneva*").  There, like here, fewer than all tenant-in-common owners of real estate filed for bankruptcy.  The lender had commenced a foreclosure proceeding which led to the bankruptcy filing.  The lender moved to modify the automatic stay so it could proceed with the foreclosure.  In *Geneva*, thirteen of thirty-three tenants-in-common owning a combined 29.22% interest in the property filed for bankruptcy.  The Debtor's plan of confirmation required  debtors to file an adversary proceeding to substantively consolidate 100% of the ownership into the bankruptcy case.

---

[1]  The Court is applying Arizona law because the Property is in Arizona and the Security Interest documents provide that the applicable law is that of the state in which the encumbered property is located.

The court modified the automatic stay to permit the foreclosure case to proceed. The court ruled that "Nothing in the Bankruptcy Code gives the Debtors the power to eliminate or modify the rights held by the non-debtor co-owners as a result of their status as tenants-in-common." *Geneva*, 496 B.R. at 903. The court further held that the Debtor's plan proposal to substantively consolidate the ownership interests of the non-debtor TICs in order to impose bankruptcy jurisdiction over the non-debtor TICs was impermissible.

The fatal flaw in Debtor's case is that as a tenant-in-common with less than a one percent interest, it cannot bind or do the bidding of the non-debtor TICs (owning interests of more than 99%). Debtor cannot force DOF IV to restructure the Security Interest. As a result, Debtor cannot establish a "reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76. The Court is dismissing the case for cause. The Court also finds that Debtor did not file the case in bad faith. The Debtor filed the case in the face of foreclosure to save the Property after DOF IV refused to negotiate. While the Court disagrees with Debtor's legal right to have filed the bankruptcy petition, Debtor did so for a valid business purpose, *i.e.*, to preserve its sole asset under pressure of foreclosure. Under such circumstances, a bad faith finding would be inappropriate. Dismissal on the ground of bad faith should be reserved for cases of clear abuse. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 375 n. 11 (2007), *Carolin Corp. v. Miller*, 886 F.2d 693, 700 (4th Cir. 1989). The Court is dismissing the case without prejudice to enable Debtor and the other TICs, but not fewer than all of them, to refile.

5

## **CONCLUSION**

For the foregoing reasons, the Court is dismissing the Debtor's bankruptcy case.  An Order will follow.


April 2, 2014

KEVIN GROSS, U.S.B.J.